# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

**WILLIAM M. BARKER**            )
      **Plaintiff**                )
                               )
**vs.**                          )        **C.A.No. 08-75Erie**
                               )
**KEYSTONE POWDERED METAL COMP.,**  )        **Magistrate Judge Baxter**
      **Defendant.**               )

## MEMORANDUM OPINION [1]

Magistrate Judge Susan Paradise Baxter

**A.**      **Relevant Procedural History**

      On March 17, 2008, Plaintiff filed the instant action claiming that Defendant Keystone Powdered Metal Company retaliated against him by excluding him from the 2005 Retention Benefit Plan.  In his one-count complaint, Plaintiff avers that this exclusion was done in retaliation for Plaintiff's filing of two previous EEOC charges (an age discrimination charge filed in August of 2004 and a retaliation charge filed in March of 2005).  Plaintiff seeks monetary relief.

      Defendant has filed a motion for summary judgment (document # 21), Plaintiff has filed

---

[1]  In accordance with the provisions of 28 U.S.C. § 636(c)(1), the parties have voluntarily consented to have a United States Magistrate Judge conduct proceedings in this case, including the entry of a final judgment.  Documents # 15, 17.

a brief in opposition (document # 27) and Defendant has filed a reply brief (document # 29).

Defendant argues for summary judgment on three alternative bases: 1) Plaintiff cannot establish a *prima facie* case of retaliation as there is no causal connection; 2) Defendant had legitimate, non-discriminatory reasons for not including Plaintiff in the Plan; and 3) Barker's prior settlement agreement precludes him from participating in the Plan.

The pending motion for summary judgment is ripe for disposition by this Court.

**B.    Standard of Review - Motion for summary judgment**

Federal Rule of Civil Procedure 56(c)(2) provides that summary judgment shall be granted if the "pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Rule 56(e) further provides that when a motion for summary judgment is made and supported, "an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must – by affidavits or as otherwise provided in this rule – set out specific facts showing a genuine issue for trial. If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party."

A district court may grant summary judgment for the defendant when the plaintiff has failed to present any genuine issues of material fact. See Fed.R.Civ.P. 56(c); Krouse v. American Sterilizer Company, 126 F.3d 494, 500 n.2 (3d Cir. 1997). The moving party has the initial burden of proving to the district court the absence of evidence supporting the non-moving party's claims. Celotex Corp. v. Catrett, 477 U.S. 317 (1986); Country Floors, Inc. v. Partnership Composed of Gepner and Ford, 930 F.2d 1056, 1061 (3d Cir. 1990). Further,

2

"[R]ule 56 enables a party contending that there is no genuine dispute as to a specific, essential fact 'to demand at least one sworn averment of that fact before the lengthy process of litigation continues.'" Schoch v. First Fidelity Bancorporation, 912 F.2d 654, 657 (3d Cir. 1990) quoting Lujan v. National Wildlife Federation, 497 U.S. 871 (1990).

The burden then shifts to the non-movant to come forward with specific facts showing a genuine issue for trial. Matsushita Elec. Indus. Company v. Zenith Radio Corp., 475 U.S. 574 (1986); Williams v. Borough of West Chester, Pa., 891 F.2d 458, 460-461 (3d Cir. 1989)(the non-movant must present affirmative evidence - more than a scintilla but less than a preponderance - which supports each element of his claim to defeat a properly presented motion for summary judgment). The non-moving party must go beyond the pleadings and show specific facts by affidavit or by information contained in the filed documents (i.e., depositions, answers to interrogatories and admissions) to meet his burden of proving elements essential to his claim. Celotex, 477 U.S. at 322; Country Floors, 930 F.2d at 1061.

A material fact is a fact whose resolution will affect the outcome of the case under applicable law. Anderson v. Liberty Lobby, Inc. 477 U.S. 242, 248 (1986). Although the court must resolve any doubts as to the existence of genuine issues of fact against the party moving for summary judgment, Rule 56 "does not allow a party resisting the motion to rely merely upon bare assertions, conclusory allegation or suspicions." Firemen's Ins. Company of Newark, N.J. v. DuFresne, 676 F.2d 965, 969 (3d Cir. 1982). Summary judgment is only precluded if the dispute about a material fact is "genuine," i.e., if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Anderson, 477 U.S. at 247-249.

**C.      The Undisputed Relevant Facts**[2]

**1.      Plaintiff's Work History**

Plaintiff began his employment with Defendant Keystone Powdered Metal Company on January 17, 1962.  Document # 24-1, Deposition of Plaintiff William M. Barker, page 3.   In 1998, Plaintiff was promoted to Director of Manufacturing with responsibility for overseeing Keystone's four separate facilities.  Id. at pages 13-14.  In early August of 2004, Plaintiff was removed from his position as Corporate Director of Manufacturing and Quality and placed into the Manager of Sales and Marketing position.  Id. at page 16.

On August 27, 2004, Plaintiff filed his first charge of age discrimination with the EEOC. Id. at page 20.  In March of 2005, Plaintiff filed a charge of retaliation with the EEOC.

Plaintiff and Defendant reached a final settlement on both charges with Plaintiff signing the settlement agreement on October 21, 2005, and Defendant signing the agreement on November 1, 2005.  Document # 24-1, Settlement Agreement, pages 45-51.  The agreement included the following provisions:

> 1.      **Barker's Employment Status.**  The Parties acknowledge that in August 2004, the Company transferred Barker from the position of Corporate Director of Manufacturing and Quality to the position of Sales and Marketing Manager, that in connection with that move, the Company

---

[2]   In support of the motion for summary judgment, Defendant has filed a "Concise Statement of Material Facts" (document # 23).  In support of his Opposition Brief, Plaintiff filed a "Counter Statement of Material Facts" (document # 28) which includes almost seventy additional "undisputed facts" not introduced by Defendant.

According to the Local Rules in effect at the time of the filing of this motion for summary judgment,  "alleged material facts set forth in the ... opposing party's Responsive Concise Statement, which are claimed to be undisputed, will for the purpose of deciding the motion for summary judgment be deemed admitted unless specifically denied or otherwise controverted by a separate concise statement of the opposing party."  Local Rule 56(e).

reduced Barker's pay from One Hundred Twenty-Two Thousand Dollars ($122, 000) a year to One Hundred Thousand Dollars ($100,000) a year effective January 1, 2005, and that Barker is currently employed by the Company as Sales and Marketing Manager at that salary.

\* \* \*

3.     **Entire Amount of Monetary Consideration**.  Barker agrees that this Agreement sets forth the entire amount of monetary consideration to which he is entitled from the Company through the date of his execution of this Agreement, apart from his current salary and benefits (e.g., outstanding stock options and vested benefits, under the Company's retirement, management retention and other benefit plans), that but for his execution of this Agreement, he would not be entitled to the monetary consideration for which this Agreement provides, and that he will not seek any further compensation or benefits of any kind or nature from the Company, including but not limited to back pay, severance pay, front pay, wages, vacation pay, bonuses, benefits, attorneys' fees, costs, interest, damages (whether compensatory, punitive or otherwise), or other monies, in connection with the matters encompassed by this Agreement.

\* \* \*

12.     **Exclusion from Meetings.**  Barker acknowledges that the Company has the right to excuse him from new product and manufacturing cost review meetings (as well as meetings that he has no business need to attend), understands that the Company intends to exclude him from such meetings in the future, and agrees that the Company has legitimate, non-discriminatory and non-retaliatory reasons for excluding him from the meetings, reasons that preclude him from challenging or contesting its action.

\* \* \*

18.     **Entire Agreement.**  The Parties agree that the foregoing constitutes the entire agreement between them and that there exist no other agreements, oral or written, express or implied, relating to any matters covered by this Agreement, or relating to any other matter whatsoever, whether or not within the knowledge or contemplation of any of the Parties at the time of execution of this Agreement.

Id.

5

### 2.      The 2000 Management Retention Pool

In 2000, Keystone developed a Management Retention Pool to provide incentives to key employees so that they would work hard to improve the value of the company and to keep the management of the company in place.  Document # 23, Defendant's Statement of Material Facts, ¶ 39; Document # 28, Plaintiff's Counter-Statement of Material Facts, ¶39.  When the 2000 MRP was implemented, key executives (as determined by the Board of Directors) were included as participants. Id. at ¶¶ 41, 42.  Plaintiff Barker was included as a participant in the 2000 MRP.  Id. at ¶ 45.

Under the terms of the 2000 MRP, if Keystone had a fair market value of 57 million dollars by December 31, 2004, MRP participants would receive a payout.  Id. at ¶ 47.  The MRP ended on December 31, 2004, but by agreement with MRP participants, the date to complete a company valuation for the MRP was extended twice with the final valuation completed by December 9, 2005.  Id. at ¶ 48.  On December 9, 2005, Duff & Phelps, experts conducting a valuation of the business, issued a report indicating that Keystone was valued at between 49.3 and 55.3 million dollars.  Id. at ¶ 55.   The parties agree that there was no payout at the conclusion of the 2000 Management Retention Pool.

### 3.      The 2005 Retention Bonus Plan

The new Retention Bonus Plan went into effect in late November 2005**.** The Board of Directors appointed a committee of three non-employee directors (Richard Reuscher, Robert Reuscher, and James Stalder) to set up the new plan and to determine who the participants

would be.  Document # 24-5, Resolution of Keystone Board of Directors[3].  According to Board

Member Robert Reuscher, it was important to Keystone that key employees remained with the

company, particularly after there was no payout under the 2000 Management Retention Pool.

Documents # 23, 28, at ¶ 81.  Not all management level employees were eligible to participate

in the 2005 Plan.  Id. at ¶ 86.


**DISCUSSION AND ANALYSIS**

**D.      Contract Analysis**

Defendant argues that Barker's prior settlement agreement precludes him from

participating in the Retention Benefit Plan.[4]  Plaintiff has not opposed this basis for the

summary judgment motion.  A district court may grant summary judgment for the defendant

when the record demonstrates "that there is no genuine issue as to any material fact and that the

movant is entitled to judgment as a matter of law" (see Fed.R.Civ.P. 56(c)), the moving party

has the initial burden of proving to the district court the absence of evidence supporting the non-

moving party's claims.  Celotex, 477 U.S. 317; Country Floors, Inc., 930 F.2d at 1061.

In this case, Defendant has not met its initial burden as to this argument. Settlement

---

[3]  Although the Resolution indicates that the Committee of three would decide upon the participants, the evidence of record indicates that others, including CEO William Hirsch and CFO Conrad Kogovsek, actively participated in the decision-making process.  Document # 26-3, Deposition of James Stalder, pages 14-15.


[4]   Defendant argues that because Plaintiff: 1) agreed to accept his demotion, 2) agreed that he would no longer be entitled to participate in management meetings, and 3) agreed that he did not retain the right to participate in future bonus plans offered to high level managers, it is clear that he understood that he no longer held the same status within the company and was no longer deemed to be a key employee.  Document # 22, pages 19-20.

agreements are interpreted and enforced pursuant to the general rules of contract interpretation and contract law.  Gatto v. Verizon Pennsylvania, Inc., 2009 WL 3062316, at *8 (W.D. Pa., Sept. 22, 2009) citing Friia v. Friia, 780 A.2d 664, 668 (Pa.Super.Ct. 2001). The Pennsylvania Supreme Court has summarized Pennsylvania law as it relates to contract interpretation:

> The fundamental rule in interpreting the meaning of a contract is to ascertain and give effect to the intent of the contracting parties. The intent of the parties to a written agreement is to be regarded as being embodied in the writing itself. The whole instrument must be taken together in arriving at contractual intent. Courts do not assume that a contract's language was chosen carelessly, nor do they assume that the parties were ignorant of the meaning of the language they employed. When a writing is clear and unequivocal, its meaning must be determined by its contents alone.

Murphy v. Duquesne University, 777 A.2d 418, 429-30 (2001) (internal quotation marks and citations omitted).

Here, no terms of the settlement agreement "clearly and unequivocally" foreclose Plaintiff's future participation in the Retention Benefit Plan.  See Excerpted Provisions herein at pages 4-5 and the Entire Settlement Agreement at Document # 34-1, pages 15-49.


**E.      Retaliation Analysis**

In support of the motion for summary judgment, Defendant argues that: 1) Plaintiff cannot show any causal connection between his exclusion from participation in the Retention Benefit Plan and his previously filed Charges of Discrimination in August of 2004 and in March of 2005; and 2) Plaintiff cannot establish evidence that contradicts Keystone's legitimate, non-discriminatory reasons for his ineligibility for participation in the Retention Benefit Plan. Document # 22, page 10.

In McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), the Supreme Court

established the now familiar burden-shifting analysis to be used in evaluating discrimination

cases.[5]  To analyze a claim of retaliation, this Court must follow a modified version of the

McDonnell Douglas burden shifting framework.  Under the Age Discrimination in Employment

Act (ADEA), it is unlawful for an employer to discriminate against an employee because he has

who has participated in any manner in an investigation, proceeding, or litigation."  29 U.S.C. §

623.

    The *prima facie* case of retaliatory discrimination includes three elements:

--------------------------------

[5]  Under this analysis, Plaintiff must first establish a *prima facie* case, which creates a
presumption of discrimination.  Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 142
(2000); Shaner v. Synthes, 204 F.3d 494, 500 (3d Cir. 2000).  Once a *prima facie* case is
established, the employer must then articulate a legitimate non-discriminatory reason for the
adverse action taken against the plaintiff.  Shaner, 204 F.3d at 500.   The employer need not
persuade the court that it was actually motivated by the proffered reasons, but needs only to
raise a factual issue as to whether it discriminated against the plaintiff.  This burden is satisfied
if the employer simply 'explains what [it] has done' or 'produc[es] evidence of legitimate
nondiscriminatory reasons.'"  Board of Trustees of Keene State College v. Sweeney, 439 U.S.
24, 25, n.2 (1978).  Thus, "the employer need only produce admissible evidence which would
allow the trier of fact rationally to conclude that the employment decision had not been
motivated by discriminatory animus."  Texas Dept. of Community Affairs v. Burdine, 450 U.S.
248, 257 (1981).

    Once the employer has met its relatively light burden of articulating a legitimate reason
for the adverse employment decision, the burden shifts back to the plaintiff to show by a
preponderance of the evidence that the employer's proffered explanation is pretextual.  Id.
Plaintiff may meet this burden either directly, by persuading the court that the employer's action
was more likely motivated by a discriminatory reason, or indirectly, by showing that the
employer's proffered explanation is unworthy of credence.  See McDonnell Douglas, 411 U.S.
at 804-805.

    Throughout this burden-shifting analysis, the ultimate burden of proving intentional
discrimination always rests with the plaintiff.  See Burdine, 450 U.S. at 253-256; Fuentes v.
Perskie, 32 F.3d 759, 763 (3d Cir. 1994).  Plaintiff may meet this burden if his "*prima facie*
case, combined with sufficient evidence to find that the employer's asserted justification is
false, may permit the trier of fact to conclude that the employer unlawfully discriminated."
Reeves, 530 U.S. at 148.

> 1) the plaintiff engaged in activity protected by the anti-discrimination statute;
>
> 2) the employer took action that a reasonable employee would have found to be materially adverse in that it might well have dissuaded a reasonable worker from making or supporting a charge of discrimination; and
>
> 3) there is a causal connection between the plaintiff's opposition to or participation in proceedings against unlawful discrimination and the employer's action.

Moore v. City of Philadelphia, 461 F.3d 331, 341-42 (3d Cir.2006).  See also Kania v. Potter, 2009 WL 4918013, at *5 (3d Cir. Dec. 22, 2009).  If the plaintiff is unable to raise a genuine issue of material fact as to each element of the *prima facie* case, summary judgment must be granted in favor of the defendant.  Krouse v. American Sterilizer Comp., 126 F.3d 494, 501 (3d Cir. 1997).

### 1.    Plaintiff's *prima facie* case of retaliation

Defendant argues that Plaintiff cannot satisfy the third prong of his retaliation claim by showing a causal connection between his exclusion from the Retention Benefit Plan in November of 2005 and his previously filed Charges of Discrimination in August of 2004 and in March of 2005.[6]

A plaintiff may establish the "requisite causal nexus by demonstrating either 1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or 2) a pattern of antagonism coupled with timing."  Lauren W. ex rel. Jean W. v. DeFlaminis, 480 F.3d 259, 267 (3d Cir. 2007) citing Krouse, 126 F.3d at 503-04 and

---

[6] For the purposes of this motion, Defendant does not dispute that Plaintiff has satisfied his burden as to the first and second prongs of his *prima facie* case.  See Document # 22, page 11 n.3.

Woodson v. Scott Paper Comp., 109 F.3d 913, 920-21 (3d Cir. 1007). However, in the absence of that proof, the plaintiff may also "show that from the evidence gleaned from the record as a whole, the trier of the fact [sic] should infer causation." Smith v. Central Dauphin School District, Slip Copy, 2009 WL 4730399, at *9 (3d Cir. Dec. 11, 2009) citing DeFlaminis, 480 F.3d at 267.

In deciding a motion for summary judgment, "when viewing the sufficiency of the *prima facie* case, our role is not to act as fact finder. Instead, we must consider the evidence taken in the light most favorable to the non-movant and determine whether [the plaintiff] can show the causation required...." Abramson v. William Paterson College of New Jersey, 260 F.3d 265, 289 (3d Cir. 2001) quoting Farrell v. Planters Lifesavers Comp., 206 F.3d 271, 286 (3d Cir. 2000).


a)      **Temporal Proximity**

A suggestive temporal proximity between the protected activity and an alleged retaliatory act can be adequate to meet the causal link requirement**.** Woodson, 109 F.3d at 920, quoting Jalil v. Avdel Corp., 873 F.2d 701, 708 (3d Cir. 1989) ("temporal proximity between the protected activity and the termination is sufficient to establish a causal link."). However, the "mere passage of time is not legally conclusive proof against retaliation." Id. quoting Robinson v. SEPTA, 982 F.2d 892, 894 (3d Cir. 1993). "While there is no *per se* rule about relying on temporal proximity to establish causation in retaliation cases, the probative value depends on 'how proximate the events actually were, and the context in which the issue came before us.'" Kellerman v. UPMC St. Margaret, 317 Fed.Appx. 290, 292-93 (3d Cir. 2009) quoting Farrell, 206 F.3d at 279.

11

As to the temporal proximity, Defendant focuses on the dates of filing of the discrimination charges (beginning in August of 2004 and continuing in March of 2005) and the date of exclusion from the Plan (in November of 2005) calculating a time lapse of fifteen months and seven months between the protected activity and the adverse action.  In Opposition, Plaintiff focuses on the date of the settlement of the charges (on November 1, 2005) and the date of the exclusion from the Plan, calculating a time lapse of less then 30 days.

In Gladsiewski v. Allegheny Energy, a recent case in which the plaintiff posited a similar argument, the district court rejected plaintiff's reasoning, opining:

> Plaintiff argues that he can establish temporal proximity between the time the Court entered summary judgment in Defendant's favor in Gladsiewski I (April 11, 2007) and the time Smith initiated the process that resulted in his termination, in mid-April 2007. He cites Annett v. University of Kansas, 371 F.3d 1233 (10th Cir.2004), in support of this argument. [...] The Tenth Circuit held that "[t]emporal proximity between Annett's previous lawsuit, resulting in a verdict rendered in March 2000 with post-trial motions continuing into June 2000, and the University's decision not to interview and hire Annett in May 2000 and June 2000 respectively, suffice to demonstrate causation for the purpose of establishing a prima facie case." Id. at 1240. [...]
>
> It is not clear why the Court of Appeals for the Tenth Circuit allowed the plaintiff to establish temporal proximity by measuring from the date of the jury verdict to the date she was rejected for a new position. The court did not explain why it did not use the date she filed her suit claiming discrimination (February 1999), which constituted her protected activity, as the starting point. Thus, although Annett supports Plaintiff's position, the court provides no reasoning to allow this Court to determine whether the decision is persuasive.
>
> Plaintiff has cited no authority from the Court of Appeals from the Third Circuit to support his position and the Annett case provides no reasoning to support its conclusion. It is unlikely that the Court of Appeals for the Third Circuit would find Annett persuasive and conclude that Plaintiff can measure from the date Gladsiewski I was decided to the date the process resulting in his termination began and point to an unduly suggestive instance of temporal proximity.

Gladsiewski v. Allegheny Energy, 2009 WL 4403382, at 9-11 (W.D. Pa. Dec.2, 2009) (J.

Cercone, adopting the Report and Recommendation of M.J. Hay).  Like the plaintiff in

Gladysiewski, Plaintiff Barker has not provided any relevant or precedential case law in support

of his position that temporal proximity should be measured from a date other than the date upon

which he entered into his protected activity.

In this case, temporal proximity of fifteen or seven months (taken alone) is not

"unusually suggestive" so as to support the inference of a causal connection between the

protected activity and the adverse action.  See Flory v. Pinnacle Health Hospitals, 346 Fed.

Appx. 872, 873 (3d Cir. Sept. 30, 2009) ("A span of mere months, let alone years, between the

protected activity and the adverse action is insufficient to raise an inference of causation.");

Theriault v. Dollar General, 336 Fed. Appx. 172, 175  (3d Cir. 2009) ("Theriault did not

establish causation because she was terminated several months after her alleged protected

activity."); Andreoli v. Gates, 482 F.3d 641, 650 (3d Cir. 2007) ("We find that the five-month

time period between Andreoli's informal complaint in February and the first alleged adverse

action in June is, without additional evidence, insufficient to raise an inference of causation.");

LeBoon v. Lancaster Jewish Community Center Association, 503 F.3d 217, 233 (3d Cir. 2007)

("A gap of three months between the protected activity and the adverse action, without more,

cannot create an inference of causation and defeat summary judgment."); Williams v.

Philadelphia Housing Authority Police Dept., 380 F.3d 751, 760 (3d Cir. 2004) (two months

time-lag between protected activity and alleged retaliation does not necessarily give rise to

inference of causation).[7]

_____

[7] See also Murphy v. Southeastern Pennsylvania Transportation Authority, 2010 WL
571799, at * 6 (E.D. Pa. Feb. 12, 2010) ("That Plaintiff's discharge occurred thirty-five months
(continued...)

**b)      Timing plus Pattern of Antagonism or Animus**

In the event that temporal proximity between the protected activity and the adverse action is not sufficient, "courts may look to the intervening period for other evidence of retaliatory animus" in order to satisfy the causal connection element of the *prima facie* case of retaliation.  Krouse, 126 F.3d at 503-04.   In this regard, "our role is not to act as fact finder," but "instead, we must consider the evidence taken in the light most favorable to the non-movant and determine whether [the plaintiff] can show causation."  Farrell, 206 F.3d at 271.

In support of his argument to establish causal connection, Plaintiff argues that: 1) ten of the twelve members of the 2000 Management Retention Pool became participants in the 2005 Retention Benefit Plan; 2) references to and discussions about Plaintiff's then pending EEOC charges and comments about Plaintiff's propensity or likelihood to litigate any exclusion from the new plan were made; and 3) that following Plaintiff's deposition in this case in late March of 2009, his employment of 47 years was terminated on May 11, 2009.  Document # 27, pages 5-6.

Initially, Plaintiff's "termination of employment" (as characterized by Plaintiff) or "layoff" (as labeled by Defendant) in 2009 cannot serve as the evidence of antagonism or

---

[7](...continued)
after Plaintiff filed his February 2005 EEOC complaint is not unusually suggestive of retaliatory motive."); Tarr v. Fedex Ground Package System, Inc., 2010 WL 331846, at * 10 (W.D. Pa. Jan. 28, 2010) ("Plaintiff complained in July of 2006 and was terminated in April of 2007. There is therefore, nothing unusually suggestive about the timing of his termination."); Taylor v. JFC Staffing Association, ___ F.Supp.2d ___, ___, 2009 WL 5217064, at *9 (M.D. Pa. Dec. 30, 2009) ("The Court is constrained to conclude that the temporal proximity of twelve days is sufficiently 'unusually suggestive' to overcome Taylor's obligation of producing evidence of a causal connection between his protected activity and the adverse action.").

retaliatory animus to support the inference of a causal connection between the protected activity

(in 2004-2005) and the adverse employment action (in November of 2005) as it is beyond the

time frame of relevant events of this lawsuit.  See Krouse, 126 F.3 at 503-04 (focusing on

evidence of retaliatory animus in the intervening period between the protected activity and the

retaliatory conduct when the temporal proximity is lacking); Riley v. Delaware River and Bay

Authority, 661 F.Supp.2d 456 (D.Del. 2009) (pattern of antagonism must predate the challenged

retaliatory action).


### 1 - the majority of the participants in 2000 Management Retention Pool became participants in the 2005 Retention Benefit Plan

In his complaint, Plaintiff alleges that he was only one of two of the original twelve

participants in the 2000 MRP who did not receive any payout under the new 2005 Retention

Benefit Plan.  Document # 1, ¶ 12.  Plaintiff alleges that the 2000 Management Retention Pool

was created in order to make up for the forbearance by Plaintiff and eleven other key

management employees to be paid raises or bonuses.  Id. at ¶¶ 8-9.[8]  Plaintiff attempts to link

---

[8]  This Court notes that the 2000 Management Retention Plan itself makes no mention of this alleged forbearance.  See Document # 24-1, pages 32-41.  However, in Plaintiff's Counter-Statement of Undisputed Material Facts (which are undisputed by Defendant, and therefore, under the Local Rules of this Court, deemed admitted), Plaintiff indicates that by letter dated January 25, 2000, from CEO Hirsch to the Compensation Committee regarding the 2000 MRP, Hirsch informed:

> None of the people participating in the management incentive plan will be eligible for bonus during the five (5) years of the contract or until after December 31, 2004.  The elimination of bonus will save the company $335,000 annually while the increase in base compensation will increase the company's expenses by $228,000.

(continued...)

the 2000 MRP with the 2005 Retention Benefit Plan and implies that his forbearance from raises and bonuses for a period of three and one-half years under the 2000 Plan entitled him to inclusion in the new plan.

Defendant argues that Plaintiff's exclusion from the 2005 Plan was based exclusively upon the fact that he no longer held a key position within the company and the creation of the new plan was unrelated to the old plan.  Between the time the first plan was created in 2000 and the creation of the second plan in 2005, Plaintiff was demoted, was no longer a member of the executive staff, ceased participating in executive level meetings, and was no longer involved in officer or director level decision-making.  Document # 23, Defendant's Statement of Material Facts, ¶ 34; Document # 28, Plaintiff's Counter-Statement of Material Facts, ¶34. See also Document # 26-4, Deposition of Board Member Richard Reuschler, at page 5 (Barker no longer considered a key employee at the time of the creation of the new plan).  Plaintiff Barker himself acknowledges that not all management-level employees were eligible to participate in the 2005 Retention Benefit Plan and concedes that many management-level positions were not included in the Retention Benefit Plan.  Documents # 23 and 28, at ¶¶ 86-87.

The evidence suggests at least the possibility of a connection between the two plans. Board Member Robert Reuscher testified that it was important to Keystone that key employees remained with the company after the 2000 Plan failed to pay out.  Document # 24-6, Deposition of Robert Reuscher, page 4 ("The Board decided that we needed a bonus plan to retain our key employees because they didn't receive anything in this [2000] plan").  See also Document # 26-

---

[8](...continued)
       See Document # 28, page 26, ¶ 169.

3, Deposition of Stalder, page 12 (indicating that the Board had "to be careful, that in no way is the new program associated with the old program."; but "under the terms of the new agreement, they would still get their bonuses.").

This testimony supports Plaintiff's argument that the creation of the new plan was linked to the old plan, so that the exclusion of any of the members of the 2000 plan may be suspect. See Farrell, 206 F.3d at 271 ("our role is not to act as fact finder," but "instead we must consider the evidence taken in the light most favorable to the non-movant and determine whether Plaintiff can show causation.").

### 2 - Board discussions regarding Plaintiff's then pending EEOC charges and comments about Plaintiff's propensity to litigate any exclusion from the new plan

Plaintiff argues that throughout September, October and November of 2005, Director Stalder's notes from meetings refer to Plaintiff's EEOC charges and to concern about the likelihood that Plaintiff would sue the company if he were not included in the new plan. Plaintiff specifically points to two portions of Stalder's deposition in support of this argument. Stalder testified that:

> I do remember in candor, I do remember at one point when we discussed this, that – and Bill Hirsch and C.J. [Kogovsek] were in the meeting, one of them said that some reference was made that Mr. Barker was not included in this program. And someone suggested he might sue us. And I explicitly remember that I said "Doesn't matter. That is not my focus. If he does, he does." I honestly remember that question being raised. But that is – I said "That is not this plan. "Is Mr. Barker important to us?" The answer was no. That was all the discussion it was.

Document # 26-3, page 88-89. Stalder further testified about his notes taken during a meeting about the new plan:

17

Q:      Opposite of his name [Shiz Kassam] are the words "not likely to pursue a claim."

A:      Yes.  This would be the issue where I made reference, Bill could possibly go after a claim and Shiz would not.

Q:      Does this jog your memory as to why Shiz Kassam was not likely to pursue a claim?

A:      Nothing was said other than I think the context Bill reported that Bill Barker could possibly go after a claim and Shiz would not.

Id. at page143.

Despite Plaintiff's arguments to the contrary, this testimony is not de facto evidence of retaliatory animus, hostility or ill will toward Plaintiff.  See Rogers v. Delaware, Dept. Of Public Safety, 541 F.Supp.2d 623, 628 n.6 (D.Del. 2008) ("Documenting employee decisions with business related evidence does not necessarily translate to proof of discriminatory animus.").

### c)      Evidence Gleaned from the Record as a Whole

A third way in which a plaintiff may establish the causal connection between the protected activity and the adverse action is that the plaintiff may also "show that from the evidence gleaned from the record as a whole, the trier of the fact [sic] should infer causation." Central Dauphin, 2009 WL 4730399, at *9, citing DeFlaminis, 480 F.3d at 267.  In Farrell, the Third Circuit instructed that when examining the causation prong of a retaliation case,  "we have been willing to explore the record in search of evidence, and our case law has set forth no limits on what we have been willing to consider."  206 F.3d at 281.  "We are to look to other kinds of evidence that a plaintiff can proffer such as intervening antagonism or retaliatory

18

animus, inconsistencies in the employer's articulated reasons for terminating the employee, or any other evidence in the record sufficient to support the inference of retaliatory animus." Tarr v. FedEx Ground Package System, Inc., 2010 WL 331846 at * 9 (W.D. Pa. Jan. 28, 2010), quoting LeBoon, 503 F.3d at 232-33.

This Court has reviewed the record as a whole and has found inconsistencies in the employer's articulated reasons sufficient that a reasonable jury could infer the causation necessary to Plaintiff's *prima facie* case.

The record reveals conflicting statements as to the purpose of the 2005 plan. Defendant argues that the 2005 Retention Benefit Plan was instituted solely to retain key employees through calendar year 2006. However, the record reveals other intent behind the creation of the new plan. Communications from Stalder to counsel refer to the creation of a new plan regarding bonus payments to management "commensurate with the outstanding effort each has expended this year" and payments "based upon 2005 services rendered." Document # 28, Plaintiff's Counter Statement of Material Facts, ¶¶ 120, 122. Other notes from Board Member Stalder indicate that CFO Kogovsek had made "a quick & dirty as to amounts due to individuals under the MRP"; that the Board "need(s) to provide incentive for these people to remain with the company," but "we don't want any connection with the MRP." Id. at ¶ 115.

The record also reveals that the only other individual included in the 2000 plan but excluded from the 2005 Plan had significant disciplinary issues. The evidence shows that Shiz Kassam had engaged in a series of inappropriate acts including entertaining customers at a strip club and being arrested for DUI. Document # 28, Plaintiff's Counter Statement of Material Facts, ¶ 163-164. See also Document # 26-3, Stalder Deposition. If as the evidence suggests, the 2005 Plan was created as a concession to the participants for the failure to payout under the

2000 plan, and the only participants excluded from the new plan were Plaintiff and Kassam, a reasonable jury could draw the inference that Plaintiff was excluded from the new plan due to the  prosecution of his EEOC claims and Kassam was excluded due to his disciplinary issues.

There is also conflicting evidence about the identity of the decision-makers tasked with determining participation in the new plan.  The Board of Directors Resolution authorized a Committee of three non-employee board members (consisting of Richard Reuscher, Robert Reuscher, and James Stalder) to set up and determine participation in the Plant.  Document # 24-5.  While the testimony of Stalder indicates that others, including CEO Hirsch and CFO Kogovsek, were actively involved in that decision-making process, and were actively involved in the defense and settlement of the EEOC charges.  Document # 26-3, pages 14-15; Document # 26-2, Deposition of CFO Conrad Kogovsek; Document # 26-9, Deposition of CEO William Hirsch.[9]

This conflicting evidence, gleaned from the record as a whole, is enough to satisfy the causation prong of Plaintiff's *prima facie* case for purposes of the pending motion for summary judgment.  See Farrell, 206 F.3d at 286 ("we recognize that different inferences might be drawn from the evidence presented in the record.  On summary judgment, however, when reviewing the sufficient of the *prima facie* case, our role is not to act as fact finder.").

_____

[9]  In assessing whether an adverse employment decision was impacted by retaliatory animus, the Court focuses upon the decisionmaker and those who have been shown to have influenced the decision.  McKinnon v. Gonzales, 642 F.Supp.2d 410, 433 n.25 (D.N.J. 2009) citing Abramson, 260 F.3d at 285.

20

### 2.       Defendant's Legitimate Non-retaliatory Reason

After a plaintiff satisfies the *prima facie* case of retaliation, the burden of production, not the burden of persuasion, shifts to the employer to "articulate some legitimate, non-discriminatory reason" for its adverse employment action.  Fuentes v. Perskie, 32 F.3d 759, 763 (3d Cir. 1994) quoting McDonnell Douglas, 411 U.S. at 802.  Defendant's burden is "relatively light" in this regard and the defendant may satisfy its burden "by introducing evidence which, taken as true, would permit the conclusion that there was a non-discriminatory reason for the unfavorable employment decision."  Id.

Defendant has provided evidence that Plaintiff Barker was not considered for the Retention Benefit Plan simply because his position was not critical to retain for the company to remain marketable, or if not sold, to continue operations.   Testimony from Stalder indicates that he devised the new plan that would distribute two million dollars to key management employees, and that he had in mind using it to retain only five individuals who he viewed as key to the company's continued operation.  Document # 24-7, Deposition of Board Member James Stalder, pages 57-59 ("That is the ones I knew and worked with and knew of that were so critically important to this.").  Stalder also testified that the selection of positions for inclusion in the 2005 Retention Benefit Plan was "driven by their importance prospectively to the company."  Id at 82.  Chief Executive Officer William Hirsch testified that Plaintiff Barker was not considered in the list of participants because he was not a key employee.  Document # 24-2, Deposition of William Hirsch, page 15.  In his own deposition, Plaintiff Barker admitted that a lot of senior managers throughout the company were not included in the 2005 Retention Benefit Plan.  Document # 24-1, Deposition of Plaintiff Barker, page 29.

Defendant has produced enough evidence to meet its relatively light burden of

articulating a legitimate non-discriminatory reason for the exclusion of Plaintiff from the 2005
Retention Benefit Plan.

### 3.    Pre-text

The burden now shifts back to Plaintiff to show by a preponderance of the evidence that
the offered reasons are actually a pretext and that a retaliatory animus played a motivating
factor in the employer's decision. Schellenberger v. Summit Bancorp, Inc., 318 F.3d 183 (3d
Cir. 2003); Fuentes, 32 F.3d at 764.[10]   At this stage of the analysis, Plaintiff Barker must show
that a reasonable jury could either "(1) disbelieve the employer's articulated legitimate reasons;
or (2) believe that an invidious [retaliatory] reason was more likely than not a motivating or
determinative cause of the employer's action." Hunter v. Rowan University, 299 Fed.Appx.
190, 194 (3d Cir. 2008) quoting Fuentes, 32 F.3d at 764.

A plaintiff must "demonstrate such weaknesses, implausibilities, inconsistencies,
incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that
a reasonable fact-finder could rationally find them unworthy of credence." Austin v. Norfolk
Southern Corp., 158 Fed.Appx. 374, 380 (3d Cir. 2005) quoting Fuentes, 32 F.3d at 764.  At this

--------

[10]  In Marra v. Philadelphia Housing Authority, the Third Circuit explained:

> We also acknowledge the close similarity between the causation analyses
> at stage one ( *prima facie* case) and stage three (pretext) of the McDonnell
> Douglas framework, see Farrell ("The question: 'Did her firing result from her
> rejection of his advance?' is not easily distinguishable from the question: 'Was
> the explanation given for her firing the real reason?' "), and that much of the
> same evidence may be relevant to both inquiries, id."

497 F.3d 286, 301 n.13 (3d Cir. 2007) (internal citation omitted).

stage in the <u>McDonnell-Douglas</u> analysis, Plaintiff may not "rely merely upon bare assertions, conclusory allegations or suspicions," but must "set forth specific facts showing that there is a genuine issue for trial."  <u>Wehrle v. Phillips</u>, 2010 WL 906096, at * 2 (D.N.J.) <u>quoting</u> <u>Gans v. Mundy</u>, 762 F.2d 338, 341 (3d Cir.1985). If Plaintiff fails to meet this "rigorous standard," summary judgment is appropriate. <u>Id.</u>

Plaintiff argues that the proffered reasons for his exclusion from the 2005 Retention Benefit Plan were pretextual in that: 1) he was the longest-serving employee of the company at the time when he was excluded from participation in the bonus pool; and 2) he had engaged in substantial forbearance in that he did not receive any bonuses or raises during the entire period from the inception of the MRP in 2000 and throughout its existence, even though his forbearance and that of the other eleven participants allowed the company to save a substantial amount of money.  See Document # 28, Plaintiff's Counter Statement of Material Facts at ¶¶ 157, and 169-170.  These statements are undisputed by Defendant, and so they are deemed admitted for purposes of the pending motion for summary judgment.  Additionally, there is deposition testimony and other evidence supporting the contention that the 2005 Retention Benefit Plan and the 2000 MRP were linked to each other, which raises a legitimate question as to why Plaintiff was excluded from participation in the new plan.   In light of this evidence, Plaintiff has pointed out "weaknesses, implausibilities, inconsistencies, incoherencies or contradictions" in Defendant's articulated reason for Plaintiff's exclusion from the 2005 Retention Benefit Plan sufficient that a reasonable jury could find them "unworthy of credence."  <u>See</u> <u>Fuentes</u>, 32 F.3d at 764.

Accordingly, summary judgment should be denied.

An appropriate Order follows.

23

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**


**WILLIAM M. BARKER**                )
    **Plaintiff**                            )
                              )
**vs.**                                            )          **C.A.No. 08-75Erie**
                              )
**KEYSTONE POWDERED METAL COMP.,**    )          **Magistrate Judge Baxter**
    **Defendant.**                         )


**O R D E R**


    AND NOW, this 31st day of March, 2010;

    IT IS HEREBY ORDERED that the motion for summary judgment filed by Defendant
is DENIED.


                           S/ Susan Paradise Baxter
                            SUSAN PARADISE BAXTER
                            United States Magistrate Judge